## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 13 2016, 8:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicole A. Zelin
Pritzke & Davis, LLP
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amanda N. Gonzales, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | July 13, 2016 <br><br> Court of Appeals Case No. 30A05-1509-CR-1483 <br><br> Appeal from the Hancock Superior Court <br><br> The Honorable Terry K. Snow <br><br> Trial Court Cause No. 30D01-1407-MR-1274 |

**Mathias, Judge.**

[1] Following a jury trial, Amanda Gonzales ("Gonzales") was convicted of murder and conspiracy to commit murder and sentenced to an aggregate term

of sixty years. Gonzales appeals and presents five issues, which we consolidate and restate as the following four:

I.      Whether the State presented evidence sufficient to support Gonzales's convictions;

II.     Whether Gonzales's convictions for both murder and conspiracy to commit murder constitute impermissible double jeopardy under the Indiana Constitution;

III.    Whether the trial court erred by excluding hearsay testimony that implicated another individual; and

IV.    Whether Gonzales's aggregate sentence of sixty years is inappropriate.

[2] We conclude that the State presented evidence sufficient to support Gonzales's conviction for murder, that the trial court did not err in excluding the hearsay testimony, and that Gonzales's sentence is not inappropriate. However, the State concedes, and we agree, that Gonzales's convictions for both murder and conspiracy to commit murder constitute impermissible double jeopardy. Accordingly, we affirm Gonzales's conviction and sentence for murder but vacate Gonzales's conviction and sentence for conspiracy to commit murder.

## Facts and Procedural History

[3] At the time relevant to this appeal, Gonzales lived with her boyfriend, Ronnie Westbrook ("Westbrook"), at a hotel on the east side of Indianapolis. Westbrook rented several rooms in the hotel. The victim in this case, twenty-eight-year-old Katrina Miller ("Miller"), stayed in one of the other rooms rented by Westbrook. On July 19, 2014, Westbrook spent the night in one of these rooms with Miller. The next morning, Westbrook awoke to the sound of

someone banging on the door to his room. When he opened the door, he saw Gonzales walking across the parking lot to another room occupied by Joe Meyers ("Meyers"). Westbrook returned to bed, but approximately fifteen to twenty minutes later, Gonzales returned and again began to bang on the door. This time, Miller answered the door, and Gonzales entered the room, asking Westbrook what he had been doing in the room with Miller. Gonzales believed that Westbrook and Miller had been having sex. Gonzales insisted that Westbrook return to their room with her and became angry when he said that he would not leave with her.

[4] In the early hours of the next morning, Gonzales, Meyers, Westbrook, and Miller all got into Meyers's SUV. Gonzales placed something in her waistband, in the small of her back, before she got in the vehicle. Meyers drove to a location on Carroll Road, which runs along the county line between Marion and Hancock Counties. A cornfield is on the Hancock County side. There, Meyers and Miller exited the vehicle. Westbrook, who was wearing a GPS-enabled ankle monitor, drove with Gonzales to the intersection of 42nd Street and German Church Road, where Westbrook got out of the vehicle. Gonzales then drove back to the cornfield where Meyers and Miller had been let out. Gonzales then gave Meyers a .380 caliber Sig Sauer brand semi-automatic pistol and told him to shoot Miller. Meyers then shot Miller in the back of the head at the base of her skull, execution style. Meyers and Gonzales then left to pick up Westbrook and returned to the hotel at approximately 6:30 a.m.

[5] Back at the hotel, Gonzales went to the room rented by Isadore Webster ("Webster") and his wife, Michelle Muse ("Muse"). Gonzales asked Muse if she had ever seen someone be killed or seen a dead body. Gonzales told Muse that she had earlier taken drugs from Westbrook's room and that Westbrook then accused both Gonzales and Miller of taking the drugs and threatened to kill them. Gonzales further told Muse that she was afraid when she, Miller, Meyers, and Westbrook went to the cornfield but that Meyers assured her that he would not harm her and proceeded to kill Miller without aid or assistance from Gonzales.

[6] Four days after Miller's murder, two Mormon missionaries found Miller's body in the cornfield and telephoned the authorities. Subsequent investigation revealed that Miller had been shot in the back of the head, just above her spine, with a .380 caliber bullet. The bullet fragments were found in her brain and a .380 shell casing was found in the field near her body. In addition to the fatal gunshot, Miller also showed signs of having been beaten before being shot: she had blunt-force trauma to the right side of her face and some of her teeth had been knocked out. She also had a contusion on her thigh.

[7] When the discovery of Miller's body was announced on the local news, Webster and Muse decided to tell the police about what Gonzales had said the day of Miller's murder. Based on the information gathered from Muse and Webster, the police collected security video from the hotel on the morning in question. This corroborated Muse's story, and the police began to look for Gonzales, Westbrook, and Meyers.

[8]     In the meantime, Westbrook cut off his ankle monitor, and he and Gonzales fled to a hotel on the west side of Indianapolis. The police eventually located and arrested the pair on July 27, 2014. While she was in jail awaiting trial, Gonzales spoke to a fellow inmate and told her that the police would never find the gun used to kill Miller and that, even if they did, it could not be forensically matched to Miller's death because "they had taken the . . . firing pin and barrel apart from the gun," and hidden it at a storage unit rented by Meyers's wife. Tr. p. 633. This jail inmate informed the police about Gonzales's statements. When the police obtained a warrant and searched the storage unit, they found a partially disassembled Sig Saur .380 caliber pistol from which the barrel had been removed. Subsequent testing revealed this to be the weapon that had fired a shell casing found near Miller's body.

[9]     On July 30, 2014, the State charged Gonzales with Level 3 felony kidnapping and murder. On April 13, 2015, the State added an additional charge of Level 1 conspiracy to commit murder. That same day, Gonzales pleaded guilty to the kidnapping and conspiracy charge in exchange for the State dismissing the murder charge. However, Gonzales later successfully petitioned to trial court to withdraw her plea of guilty, and the State reinstated the charge of murder.

[10]    A three-day jury trial commenced on August 3, 2015. Among the State's witnesses was Detective Trent Smoll ("Detective Smoll") of the Hancock County Sheriff's Department. On cross-examination, Gonzales's trial counsel asked Detective Smoll if he had spoken with a man named Josh Brown ("Brown") during his investigation of Miller's death. Detective Smoll answered

in the affirmative, and Gonzales's counsel asked if Brown had told him that he heard another individual state something. At this point, the State objected on hearsay grounds, and the trial court sustained the objection. Gonzales then made an offer to prove by stating that Brown told Detective Smoll that he heard Miller "was robbing people and that was what got her killed." Tr. p. 889. At the conclusion of the State's case-in-chief, the trial court granted Gonzales's motion for judgment on the evidence with regard to the charge of kidnapping.

[11] During Gonzales's case-in-chief, she called Detective Smoll as a witness and asked him if he had spoken with Brown and two other men named Chris Taylor ("Taylor") and Jordan Storch ("Storch"). Gonzales's counsel attempted to elicit from Detective Smoll that Taylor had told him that Storch had told Taylor that he had killed someone. Although the State objected again on hearsay grounds, the trial court granted defense counsel some leeway and allowed Detective Smoll to testify that "Taylor . . . did come to the Sheriff's Department and he did say that he overheard Jordan Storch say that he killed a bitch, or something like that, he wasn't specific. Any of that information was not backed up by any evidentiary value[.]" Tr. pp. 942-43. Notably, however, Gonzales did not call Brown, Taylor, or Storch as witnesses.

[12] The jury was instructed regarding accomplice liability and found Gonzales guilty of murder and conspiracy to commit murder. A sentencing hearing was held on September 2, 2015, at which the court found no mitigating circumstances and found as aggravating the following circumstances: the harm caused was greater than that necessary to commit the crime; Gonzales had

threatened witnesses while she was in jail; Gonzales was on bond at the time the offenses were committed; new charges were filed against Gonzales while she was incarcerated, one of which resulted in a conviction for battery on a witness against her; charges were pending against Gonzales in another county; and the "cold and calculate[ed]" nature of Miller's murder. Tr. pp. 1066-67. The court then imposed a sentence of sixty years on the murder conviction and a concurrent thirty-year sentence on the conspiracy conviction. Gonzales now appeals.

## I. Sufficiency of the Evidence

[13] Gonzales first argues that the State failed to present sufficient evidence to support her conviction for murder. Of course, when reviewing a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence or judge the credibility of the witnesses. *Neukam v. State*, 934 N.E.2d 198, 202 (Ind. Ct. App. 2010) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)). Instead, we consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

[14] To convict Gonzales of murder, the State was required to prove that she knowingly or intentionally killed Miller. *See* Ind. Code § 35-42-1-1(1). Here, the State argued that Gonzales was guilty as an accomplice and that Meyers shot Miller, and the jury was instructed regarding accomplice liability. To convict

Gonzales as an accomplice, the State was required to prove that she knowingly or intentionally aided, induced, or caused Meyers to kill Miller. *See* Ind. Code § 35-41-2-4. Our supreme court has explained the law of accomplice liability as follows:

> A defendant may be charged as the principal but convicted as an accomplice. Generally there is no distinction between the criminal liability of an accomplice and a principal, although evidence that the defendant participated in every element of the underlying offense is not necessary to convict a defendant as an accomplice. There is no bright line rule in determining accomplice liability; the particular facts and circumstances of each case determine whether a person was an accomplice. We consider four factors to determine whether a defendant acted as an accomplice: (1) presence at the scene of the crime; (2) companionship with another at scene of crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during, and after occurrence of crime. That a defendant was present during the commission of a crime and failed to oppose the crime is not sufficient to convict her. But, presence at and acquiescence to a crime, along with other facts and circumstances may be considered.

*Castillo v. State*, 974 N.E.2d 458, 466 (Ind. 2012) (citations and internal quotations omitted).

[15] Gonzales admits that evidence shows that she was at the scene of the crime. However, Gonzales claims that the jury must have credited Muse and Webster's version of events, i.e., that Westbrook was angry with Gonzales and Miller because he thought they had stolen drugs from him and that Meyers shot Miller with no assistance from her. However, the jury may choose not only

whom to believe but also what portions of conflicting testimony to believe, and is not required to believe any witness' testimony, even when it is uncontradicted. *Wood v. State*, 999 N.E.2d 1054, 1064 (Ind. Ct. App. 2013).

[16] More importantly, however, Gonzales's argument overlooks the testimony of Westbrook, who testified that Gonzales gave Meyers a gun and told him to shoot Miller. Tr. p. 685. Thus, the evidence indicates that Gonzales was in companionship with another at the scene of the crime. Instead of merely failing to oppose the crime, she actively encouraged it by telling Meyers to shoot Miller and providing him with the gun. Moreover, Gonzales's course of conduct before, during, and after the crime supports a conclusion that she was an accomplice. She was angry with Westbrook, and apparently Miller, for sleeping together in the same room, actively encouraged Meyers to kill Miller, fled to another hotel after the killing, and knew that Meyers had partially disassembled and disposed of the gun.

[17] From this evidence, the jury could readily conclude that Gonzales knowingly aided, induced, or caused Meyers to kill Miller. Gonzales's arguments to the contrary are little more than a request that we consider the evidence in her favor, reweigh the evidence, and judge the credibility of the witnesses, which we may not do on appeal. *See Neukam*, 934 N.E.2d at 202 (citing *McHenry v. State*, 820 N.E.2d at 126).

## II. Double Jeopardy

[18]    Gonzales also claims that her convictions for both murder and conspiracy to commit murder constitute impermissible double jeopardy. As we have explained previously:

> Under the *Richardson* actual evidence test, conviction for two offenses may constitute double jeopardy if the defendant demonstrates a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of the second offense. *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (citing *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999)). Our supreme court has explained that the actual evidence test is not simply whether the evidentiary facts used to establish *one* of the essential elements of the first offense may also have been used to establish *one* of the essential elements of the second offense. *Id.* (citing *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)). Under the actual evidence test, if the evidentiary facts establishing any one or more elements of one of the challenged offenses establishes the all essential elements of the second challenged offense, double jeopardy considerations prohibit multiple convictions. *Alexander v. State*, 768 N.E.2d 971, 973 (Ind. Ct. App. 2002), *aff'd on reh'g*, 772 N.E.2d 476, *trans. denied.* It is not required that the evidentiary facts establishing all of the elements of the one challenged offense also establish all of the essential elements of a second challenged offense, and both of the offenses being analyzed for double jeopardy purposes must be viewed in the context of the other offense. *Id.*

*Chappell v. State*, 966 N.E.2d 124, 131-32 (Ind. Ct. App. 2012) (footnote omitted).[1]

[19] Here, in the information charging Gonzales with conspiracy, the State alleged that she agreed with Meyers to kill Miller and that the overt act in furtherance of the conspiracy was that Meyers "forced Katrina Miller at gun point to enter a corn field and then shot Katrina Miller in the head." Appellant's App. p. 73. Thus, one of the overt acts alleged was the actual murder itself.

[20] Under these facts and circumstances, we agree with Gonzales and the State that Gonzales's convictions for both murder and conspiracy to commit murder constitute impermissible double jeopardy. That is, it is a reasonable possibility that the jury relied upon the same evidentiary facts — the murder of Miller — to establish all of the elements of murder and one of the elements of conspiracy to commit murder. This is improper. *See Grinstead v. State*, 845 N.E.2d 1027, 1037-38 (Ind. 2006) (concluding that convictions for both robbery and conspiracy to commit robbery constituted double jeopardy where the overt act alleged was the act of robbing the victim, but that convictions for murder and conspiracy to commit murder did not constitute double jeopardy where overt

---

[1] In addition to the *Richardson* actual evidence test, our courts have long adhered to a series of rules of statutory construction and common law that were often described as double jeopardy, but were not governed by the constitutional test set forth in *Richardson*. *Grinstead v. State*, 845 N.E.2d 1027, 1037 (Ind. 2006) (citing *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002)). Among those sorts of claims that are considered to constitute "double jeopardy" are a claim based on "[c]onviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished." *Id.* (citing *Richardson*, 717 N.E.2d at 56-57 (Sullivan, J., concurring); *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002)).

acts alleged did not include the act of killing the victim); *Fosha v. State*, 747 N.E.2d 549, 553 (Ind. 2001) (concluding that convictions for both murder and conspiracy to commit murder constituted double jeopardy where the evidentiary facts used by the jury to establish the essential elements of the conspiracy charge were also used to prove the essential elements of murder), *overruled in part on other grounds by Gutermuth v. State*, 868 N.E.2d 427 (Ind. 2007).

Gonzales argues that we should vacate her conviction for murder to cure this double jeopardy violation, repeating her contention that the evidence was insufficient to support her conviction for murder. However, we have already concluded that the evidence was sufficient to support Gonzales's murder conviction. It has long been held that the proper remedy for a double jeopardy violation is to vacate the lesser of the two convictions. *See Clark v. State*, 752 N.E.2d 209, 210 (Ind. Ct. App. 2001) (citing *Richardson*, 717 N.E.2d at 54). We therefore reverse Gonzales's conviction for conspiracy to commit murder and vacate her conviction and sentence entered thereon.[2]

## III. Exclusion of Evidence Regarding Other Suspect

Gonzales next contends that the trial court erred in limiting her cross-examination of Detective Smoll regarding the fact that Josh Brown had told the

---

[2] Because we reverse Gonzales's conviction for conspiracy to commit murder, we need not address her claim that the evidence was insufficient to support her conspiracy conviction.

detective that he had heard that Miller was killed because she had "robbed" someone and that Chris Taylor had told the detective that Jordan Storch had admitted to killing "a bitch." Tr. pp. 942-43.

[23] Questions regarding the admission of evidence are within the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. *Wells v. State*, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009), *trans. denied*. A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id*.

[24] Gonzales claims that the trial court improperly prevented her from presenting evidence implicating another suspect in the murder of Miller. The State responds that the trial court simply exercised its discretion in excluding hearsay testimony. Hearsay is defined by rule as a statement that is not made while the declarant is testifying at trial that is offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay evidence is generally inadmissible. Ind. Evidence Rule 802.

[25] Here, the statements Gonzales wished to elicit through Detective Smoll were unquestionably hearsay: they were statements made by Brown and Taylor that were not made while they were testifying and that were proffered to prove the truth of the matter asserted in the statements, i.e. that Miller was killed for stealing drugs and Storch admitted to killing "a bitch." In fact, the statement

made by Storch was hearsay within hearsay: it was what Detective Smoll said Taylor said that Storch said.

[26] Gonzales makes no claim that these statements were subject to any of the well-defined exceptions to the hearsay rule. Accordingly, we cannot say that the trial court abused its discretion in excluding these hearsay statements. Gonzales does cite to *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997) for the proposition that it is error to "categorically exclude the defendant's evidence supporting [a] defense that the murder was committed by another person." However, at issue in *Joyner* was the *relevance* of the evidence supporting the defense that the crime was committed by another person. *See id*. at 390.[3] The *Joyner* court did not address the admissibility of hearsay evidence at all, as the evidence implicating another individual in that case was not hearsay.

[27] Instead, we agree with the State that this case is more akin to *Lashbrook v. State*, 762 N.E.2d 756 (Ind. 2002). In that case, the trial court had excluded, under the hearsay rule, evidence that "one Nicholas Perez had said that the victim, Duane Morton, was going to die or that something adverse was going to

---

[3] The excluded evidence in *Joyner* included:

> Oral Bowens, a married man, was having an affair with the victim, Hernandez; Bowens worked at the same place as Hernandez and the defendant; Bowens had sexual relations with Hernandez the night of March 1; he had lied to his wife about where he was that evening and later told his wife that he had had an argument with Hernandez on March 2, the last day Hernandez was seen alive; and Bowens came in late to work the morning of March 3 and lied about his tardiness on his time card, which showed that he had come in on time.

*Id*. at 389.

happen to him." *Id*. at 758. On appeal, the defendant cited *Joyner* in support of his argument that the trial court's exclusion of Perez's statements was reversible error. Our supreme court disagreed, first noting that Lashbrook had presented "no material evidence that Perez was connected to the crime." *Id*. The court further noted that other witnesses had testified regarding the fact that Perez had stated that the victim was going to die, and the defendant used this evidence in his closing statement to argue to the jury that there was reasonable doubt regarding Lashbrook's guilt. *Id*. Accordingly, the court held that "the admission of further testimony establishing the Perez utterance would have been cumulative, and its exclusion did not prevent the defendant from making the same argument to the jury." *Id*. at 758-59.

[28]   The present case is substantially similar to *Lashbrook*. Other than the hearsay statement, Gonzales presented no material evidence that Storch was involved in Miller's death. More importantly, Gonzales called Detective Smoll as a witness and elicited from him testimony that Taylor told him that Storch claimed to have killed "a bitch." Smoll then explained that Taylor's information was not backed up by any other evidence. Brown's statement that he heard that Miller was killed for stealing drugs was substantially the same as Webster and Muse's testimony regarding Gonzales's story that Miller was killed because Westbrook thought she had stolen drugs.

[29]   Thus, just as in *Lashbrook*, the jury heard evidence that another person may have killed Miller. Gonzales used this evidence to question the thoroughness of Detective Smoll's investigation. *See* Tr. pp. 944-46. Gonzales also referenced

this evidence in her closing statement to the jury to argue that there was reasonable doubt regarding her guilt. *See* Tr. p. 1002. We therefore are unable to conclude that the exclusion of Taylor and Brown's statements constituted reversible error.

## IV. Appropriateness of Sentence

[30]     Lastly, Gonzales claims that her sixty-year sentence is inappropriate. As we recently explained in *Rose v. State*:

> Even if a trial court acted within its statutory discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. This authority is implemented through Indiana Appellate Rule 7(B), which provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

> Still, we must and should exercise deference to a trial court's sentencing decision, because Rule 7(B) requires us to give "due consideration" to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. Although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to level the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case.

> Our review under Appellate Rule 7(B) should focus on the forest—the aggregate sentence—rather than the trees— consecutive or concurrent, number of counts, or length of the

sentence on any individual count. The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate.

36 N.E.3d 1055, 1063 (Ind. Ct. App. 2015) (footnote omitted) (some citations and internal quotations omitted).

[31] The sentencing range for a murder conviction is forty-five to sixty-five years, with fifty-five years being the advisory sentence. Gonzales was sentenced to a term of sixty years, above the advisory, but below the maximum sentence. With this in mind, we turn to the nature of the offense and the character of the offender.

[32] The nature of the Miller's death was cold and brutal. Because Gonzales was jealous of Miller and the attention that Westbrook had shown her, Gonzales gave Meyers a handgun and told him to kill Miller, the mother of a young child. The evidence indicates that Miller was brutally beaten before being shot, execution style, in the back of the head. She was then left unceremoniously to lie in a cornfield until innocent passers-by noticed her body. Although all murders are horrible, the manner of Miller's murder was particularly callous. This alone would justify the imposition of a sentence above the advisory. However, Gonzales's character provides further support for the trial court's sentence.

When Gonzales committed the instant crime, she was out on bond on pending charges of possession of cocaine, driving while intoxicated, and driving while suspended. Moreover, new charges were filed against Gonzales while she was incarcerated, one of which resulted in a conviction for battery on a witness against her, and other charges were pending against her in another county. Also, nothing in the record indicates that Gonzales ever demonstrated any remorse for her actions. None of this speaks well for her character. In short, Gonzales's sixty-year sentence is not inappropriate.

## Conclusion

The State presented evidence sufficient to support Gonzales's conviction for murder. Ample evidence supports a conclusion that Gonzales aided, induced, or caused Meyers to kill Miller. However, we agree with Gonzales and the State that Gonzales's convictions for both murder and conspiracy to commit murder constitute impermissible double jeopardy. We therefore vacate her conviction for conspiracy and the sentence imposed thereon. The trial court did not err in excluding evidence that the investigating detective heard evidence that another individual may have committed the murder. Lastly, Gonzales's sixty-year sentence is not inappropriate in light of the nature of the offense and Gonzales's character.

Affirmed in part, reversed in part.

Vaidik, C.J., and Barnes, J., concur.