ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

Linda G. Nicholson
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

In the

# Indiana Supreme Court

No. 28S01-0501-PC-16

JERRY GRINSTEAD,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

Appeal from the Greene Circuit Court, No. 28C01-9406-CF-42
The Honorable David K. Johnson, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 28A01-0402-PC-69

**April 20, 2006**

**Shepard, Chief Justice.**

Appellant Jerry Ray Grinstead was convicted of murdering Joseph Cross. Grinstead has raised claims of ineffective assistance of counsel in a petition for post-conviction relief. Among other points, he asserts that his counsel's performance was deficient by stipulating to the admission of hearsay statements made by a co-participant in the murder of Cross in exchange for the State's promise not to call that co-participant as a witness. The post-conviction court held

that counsel's decision to agree to the stipulation and thus keep the co-conspirator off the stand was a reasonable one and denied the petition. We agree.

**Facts and Procedural History**

On the night of June 3, 1994, Jerry Ray Grinstead and his cousin Charles Alan Edmonson took Joseph Cross to a secluded area where he was beaten to death. Grinstead v. State, 684 N.E.2d 482, 484-85 (Ind. 1997). Both men were present while Cross was being beaten, though they dispute which of them delivered the fatal blows. Id.

During Grinstead's murder trial, his counsel stipulated to the admission of three statements made by Edmonson that gave details of the crime. In return, the State apparently agreed that it would not call Edmonson as a witness. The first of Edmonson's statements was a fabricated alibi. Id. at 484-85 nn. 1 & 4. In the other statements, made first to a police investigator, and then at a sentencing hearing following his guilty plea, Edmonson placed substantial blame for the murder on Grinstead. Id. Although Edmonson was uncertain as to which of the two had actually struck the fatal blow, he claimed that both Grinstead and he had participated in the attack including striking Cross with a tire iron. (R. at 474, 502-03.)

Grinstead testified at trial with a significantly different tale. He admitted to being the first to strike Cross and causing him to fall, but denied any further involvement, claiming that only Edmonson had kicked Cross and hit him with the tire iron. In fact, Grinstead claimed that after throwing the first punch, he spent the duration of the attack "hollering at him [Edmonson] not to do it." (R. at 1086.) Grinstead did admit helping Edmonson drag Cross' body from the area of the murder (R. at 1088), and later testified that while he had not taken Cross' wallet, he had thrown it away as he and Edmonson left the scene. (R. at 1103.)

The jury found Grinstead guilty of murder, conspiracy to commit murder, theft, and conspiracy to commit theft. The court sentenced Grinstead to a total of 108 years. On direct

appeal, Grinstead raised several contentions including a double jeopardy claim. We affirmed. See Grinstead, 684 N.E.2d at 485-87.

Grinstead's present petition claims that both his trial counsel and appellate counsel were ineffective. The post-conviction court rejected Grinstead's petition and held that both lawyers had rendered effective assistance. The Court of Appeals reversed, finding that the cumulative effect of the errors by Grinstead's trial counsel had been sufficient to undermine confidence in the trial outcome. See Grinstead v. State, No. 28A01-0402-PC-69, slip op. at 12-13 (Ind. Ct. App. Sept. 23, 2004) vacated. It ordered a retrial. Id. We granted the State's petition to transfer.

## I. Grinstead's Claims About Trial Counsel

Grinstead's contentions about his trial lawyer involve his counsel's failure to raise objections during the trial or questionable strategy and tactics employed by counsel during the trial. Grinstead largely focuses on seven different alleged failures. We address each of these claims.

Claims of ineffective assistance of trial counsel are generally reviewed under the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984). Thus, a claimant must demonstrate that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice. Strickland, 466 U.S. at 687-88. Prejudice occurs when the defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome." Id.

Appellate review of the post-conviction court's decision is narrow. We give great deference to the post-conviction court and reverse that court's decision only when "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court." Prowell v. State, 741 N.E.2d 704, 708 (Ind. 2001).

3

Although the two parts of the <u>Strickland</u> test are separate inquires, a claim may be disposed of on either prong. <u>See</u> <u>Williams v. State</u>, 706 N.E.2d 149, 154 (Ind. 1999). <u>Strickland</u> declared that the "object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." 466 U.S. at 697.

It is thus fairly common practice in Indiana to address only the prejudice prong, as it frequently represents a short cut. Doing that may save time, but it can also degrade the post-conviction process into a super appeal, just the thing we say post-conviction is not. Reviewing courts should remain mindful that there are occasions when it is appropriate to resolve a post-conviction case by a straightforward assessment of whether the lawyer performed within the wide range of competent effort that <u>Strickland</u> contemplates.

<u>A. Polygraph Examination and Testimony</u>

Grinstead raises two related contentions about the admission of the polygraph evidence in his trial. First, he contends that counsel should not have permitted him to take the exam when there was no "strategic justification" for doing so in light of the fact that the stipulation agreement did not provide that the State would dismiss the charges if the results of the exam demonstrated Grinstead was being truthful. (Br. Pet'r.-Appellant at 12-13.)

We find this contention entirely baseless. It rests largely on the premise that the State would have been willing to drop all charges if Grinstead proved truthful. While such agreements may be reached when lesser offenses are at issue, it seems far from certain that a prosecutor would drop all charges against a defendant in a murder investigation solely on the basis of polygraph evidence (which Grinstead himself labels "inherently unreliable."). (Br. Pet'r.-Appellant at 13.)

As counsel testified at the post-conviction hearing, the stipulation he agreed to at the time was a standard stipulation, and his experience was that an agreement to drop charges was

"generally not put in a stipulation in Greene County." (P.C. Tr. at 13.) This certainly suggests that counsel's performance on this point was within professional norms.

Moreover, the post-conviction testimony revealed that the decision to submit to a polygraph examination was Grinstead's, not his counsel's. (P.C. Tr. at 11.) In point of fact, counsel appeared to take numerous steps to safeguard Grinstead from an unfavorable result. In particular, counsel attempted to ensure that the examiner was one he had worked with before and whom he trusted enough as an examiner to "allow any of [his] clients/defendants to be given the test by the State of Indiana." (P.C. Tr. at 14, 26.) Counsel also made clear to Grinstead the danger of submitting to the exam, stating that his general recommendation to clients considering doing so is that "either you are 100% squeaky clean on this or you do not take it period, it can only hurt you." (P.C. Tr. at 11-12.) Counsel advised Grinstead that he could not use subterfuge to alter the results of the exam. (P.C. Tr. at 11-12.)

These warnings were ultimately about all that counsel could have done. It was Grinstead's choice to submit to the exam and his choice to misrepresent his level of involvement in the crime to both his lawyer and the examiner. In fact, Grinstead admitted at trial that it was his "not being truthful and not having told [that he had been the first to hit Cross] before [that] effected the polygraph outcome."[1] (R. at 1090.)

As for whether the only reasonable strategy might have been for the lawyer to put his foot down and bar his client from participating, counsel acknowledged that he considered at least two justifications for allowing Grinstead to submit to the exam. First, although there was no formal agreement with the State to drop the charges, counsel believed a positive result could be used to bargain for a reduction in the charges. (P.C. Tr. at 12.) Counsel also thought a result showing Grinstead's truthfulness could be used at trial to bolster his client's credibility. (P.C. Tr. at 12.)

---

[1] This statement was actually a question posed to Grinstead by counsel. Grinstead's response was "Yes." (R. at 1090.)

5

Ultimately, we cannot conclude that the post-conviction court was wrong, based on the evidence before it, in deciding that allowing Grinstead to submit to a polygraph exam was within professional norms.

Grinstead also faults his counsel's failure to object to certain testimony by the polygraph examiner. He says his counsel should have objected when examiner State Police Officer Mark James[2] said, "I believe that Mr. Grinstead did in fact hit Mr. Cross and I believe that he did in fact help kill Mr. Cross." (R. at 1002.) The State concedes that these statements crossed the line of permissible testimony by interjecting the examiner's personal opinion (Pet. Transfer at 10), but argues that any error was of negligible prejudicial effect since the only difference between what Officer James actually said and what he could have testified to based on the results of the exam was semantic. (Pet. Transfer at 10.)

The post-conviction court called James' statement "mere recitation of other evidence which demonstrated the same evidence." (Appellant's App. at 154.) While at least part of the testimony at issue might well have been subject to objection ("I believe that he did in fact help kill Mr. Cross"), Grinstead's own acknowledgement of his level of participation in the crime was such that we cannot say a lawyer who passed on objecting was deficient, especially in light of the "strong presumption" of adequate performance.

Because the evidence before the post-conviction court did not lead to the unerring and unmistaken conclusion that Grinstead was prejudiced by Officer James' statement, we do not believe that the failure to object to this statement constitutes ineffective assistance of counsel.

B. Failure to Call a Defense Witness

Grinstead says his lawyer should have called Jack Lillie as a witness. Lillie was a bartender at the Palace Bar where Grinstead, Edmonson, and Cross were drinking together before the murder. Although Lillie testified at the post-conviction hearing that he could not

---

[2] The record refers to this officer as both Mark James and Mark Jones. We use the former because the officer referred to himself as "James" as did petitioner's counsel.

remember the incident, Grinstead claims that at the trial Lillie could have collaborated testimony that Grinstead gave Lillie a pitcher of beer before he, Edmonson, and Cross left the Palace Bar, and that he asked Lillie to hold the pitcher because they would be back shortly. (Br. Pet'r.-Appellant at 15-17; R. at 1079; P.C. Tr. at 35-37.) This testimony, Grinstead insists, would have "supported [his] contention that there was no plan or conspiracy to take Cross out and rob and kill him, [and as his version of the events suggested] that they left the bar together to give Cross a ride to a house where he [Cross] planned to buy marijuana." (Br. Pet'r.-Appellant at 16.)

Contending that Lillie would have remembered the incident better at the time of the trial, as he said he would (P.C. Tr. at 37), is plausible but plainly speculative. Counsel could well have decided that hoping for testimony about this point was not worth the effort, especially given that during the cross-examination of one of the State's witnesses, counsel was able to elicit testimony that collaborated Grinstead's assertion that he and Edmonson had initially left the bar with Cross in order to drive Cross to a location where he could smoke marijuana. (R. at 236-37, 1079-80.)

## C. Admission of Edmonson's Statements

The centerpiece of Grinstead's ineffective assistance claim is his lawyer's stipulation to the admission of three incriminating hearsay statements made by Edmonson rather than requiring Edmonson to testify and be cross-examined. (Br. Pet'r.-Appellant at 7-9.)

The essence of Grinstead's claim, and the Court of Appeals' opinion, is that the decision to allow the statements to be entered into evidence cannot be considered valid trial strategy because it effectively denied Grinstead his right to confront Edmonson and thereby directly challenge the evidence that "was the heart of the State's case against Grinstead." Grinstead, slip op. at 10. (Br. Pet'r.-Appellant at 9; Reply Br. Pet'r.-Appellant at 2.) We might find this reasoning more persuasive were we to agree that it is always defective strategy to keep an opponent's witness off the stand and that counsel's choice in this case did in fact leave the State's case unchallenged.

7

In Garland v. State, 719 N.E.2d 1184 (Ind. 1999), during a joint trial of two co-defendants, the State moved to admit the highly prejudicial videotaped statement of one of the defendants that was made in the absence of the co-defendant's counsel. Counsel for both defendants objected to the admission of the statement, but did so on the wrong grounds. Id. at 1185-86. Rather than objecting to what was clearly a violation of the Confrontation Clause under Bruton v. United States, 391 U.S. 123, 136 (1968), defense counsel objected to the admission on grounds of relevancy and the appearance of the defendant in the video. Garland, 719 N.E.2d at 1185-86.

In concluding that Garland was denied effective assistance, we considered and rejected the State's argument that the failure to make a proper objection should be viewed as trial strategy given the efforts by defense counsel to minimize the harm of the statement. Id. However, our finding that defense counsel's performance fell below "the required standard" was actually based on counsel's attempt to object, but doing so on the wrong grounds. Id.

Consequently, Grinstead's reading of Garland that the failure to object to the admission of statements by a co-defendant can never constitute valid trial strategy misunderstands that case. We considered the inclusion of the videotaped statement not to be trial strategy precisely because Garland's counsel tried to bar the evidence — thus suggesting that it had never been trial strategy to admit the evidence. Put simply, Garland was denied effective assistance because her lawyer made a grossly improper objection to a highly prejudicial statement, not because it is never reasonable trial strategy to choose to allow into evidence an otherwise inadmissible statement by a co-defendant.

In this case, counsel explained the decision to stipulate to the admission of the statements based on entirely reasonable grounds. As counsel explained at the post-conviction relief hearing:

> I definitely did not object [to] them [the statements] . . . . I had agreed to stipulate to their admission because I did not want Edmonson on the stand to testify, I thought it was far less damaging to our case to have just statements read as opposed to him being on the stand testifying . . . . I mean if you want it to be quite honest I believe that he was far more credible and believable than Mr. Grinstead.

(P.C. Tr. at 16-17.)

Counsel obviously had some doubts about the effect Edmonson's testimony would have on the jury, especially if the jury were able to compare the live testimony of Edmonson and Grinstead.[3] Because counsel believed that Edmonson was going to testify ("he was here and he was in the jail, he was going to testify" (P.C. Tr. at 18)), choosing to stipulate to the statements in exchange for preventing a potentially damaging witness from taking the stand seems to be a reasonable and professional choice.

Moreover, defense counsel hardly left the State's case unchallenged. Counsel challenged Edmonson's credibility on several occasions, introducing evidence of Edmonson's appeal from his guilty plea (R. at 1061-63), and a note that Edmonson passed to Grinstead while the two were awaiting trial that indicates that Edmonson planned to give a statement to police but wanted to know what Grinstead had told the police so he could construct a story that would "match up." (R. at 1059.)

Moreover, throughout the trial, counsel tried to demonstrate that the State's evidence linking Grinstead to the actual killing was equivocal at best. For example, he attempted to demonstrate that the blood spatters on Grinstead were consistent with his client's account that he had not hit Cross with the tire iron. (R. at 906-07, 1194-95). He also sought to show that the State had found blood on Edmonson's shoes but not Grinstead's, despite the fact that the physical evidence suggested someone had repeatedly kicked Cross during the attack. (See, e.g., R. at 371-72.)

Although some might still say it would have been preferable to have Edmonson on the stand to challenge his credibility directly, counsel's decision on this score falls

_____

[3] These doubts were not entirely abstract. The record of the trial shows that evidence was introduced — as part of Edmonson's statement at the sentencing hearing — that Edmonson was younger, had a more "clean cut" image, a fairly trivial criminal history, an honorable discharge from the United States Navy, and a general reputation as a person who avoided trouble. (R. at 492, 494, 496-97.) In comparison, Grinstead had a less presentable image, admitted to a more serious criminal history -- including previous incidents in which he had lied to police and stolen a car — and to being an alcoholic. (R. at 1075-76, 1108-10.) These differences give some credence to counsel's belief that Edmonson would have been a more attractive witness than his own client.

9

within the range of acceptable trial strategy, and we will not second-guess what appears to be the sort of reasonable choice litigators make.

### D. "Vouching" Testimony

Grinstead also faults his counsel for failing to object to a statement by State witness Detective Alan McElroy that "vouched" for Edmonson's credibility. It seems the State asked McElroy's "prospective [sic] as the investigating officer" as to which of the co-defendants was more cooperative during the investigation. (R. at 1043.) McElroy replied that "[b]oth appeared cooperative" but that "Edmonson later in his second statement . . . provided a very believable statement at that point . . . ." (R. at 1043-44.) In response to the direct question, "[W]as [either] of the defendant[s] more cooperative than the other?" McElroy stated, "I believe Allan Edmonson was the most cooperative." (R. at 1044.)

The State acknowledges that McElroy's "vouching" testimony was "likely inadmissible because a witness is not competent to testify that another witness is or is not telling the truth . . . ." (Pet. Transfer at 9.) If the strategy regarding Edmonson was, as counsel suggests, to question his credibility, failing to object on this point certainly runs contrary to that strategy. Consequently, we conclude that counsel's performance on this point probably fell below reasonable standards of professionalism. Of course, whether a lawyer's performance failed to meet the performance prong of the Strickland test depends on the lawyer's efforts taken as a whole. We will examine that question later on.

### E. Failure to Object to Admission of a Photograph

Petitioner claims his counsel should have objected to the introduction of State's Exhibit 18. That exhibit consisted of two photographs of Grinstead with his chest and back exposed. The photographs show that Grinstead has numerous tattoos, among which are a Confederate flag and two swastikas — one on his right bicep and one on his left hand. The State used the photographs with several witnesses for identification purposes, though the jury saw them only

10

once. Grinstead says these photographs served no purpose but to "portray Grinstead in an unfavorable light and taint the jury's view of him." (Br. Pet'r.-Appellant at 18.)

Post-conviction counsel seems right about that, but in light of the fact that Grinstead sat through trial in front of the jury with a swastika on his left hand, we think it plausible that trial counsel considered the matter relatively unimportant.

F. Mere Presence Instruction

Grinstead also says his lawyer should have objected to statements the prosecutor made during closing argument which he claims "misstated the law applicable to the argued defense" (Br. Pet'r.-Appellant at 19), and for counsel's failure to insist upon the inclusion of a jury instruction about mere presence.

During arugment the prosecutor said, "even [if] you accept for a moment that he did just stand [there,] he hit [Mr. Cross] and he watched the other guy kill him[. D]oes that excuse him from being guilty of this crime? Not under the accomplice theory it does not." (R. 1202.) Grinstead contends that this was a legal misstatement, used by the prosecution to imply that Grinstead was culpable for the murder simply because of his presence at the scene.

The State sought to convict Grinstead under an accomplice theory. While mere presence is insufficient to establish culpability under such a theory, "presence at the scene may be considered along with 'the defendant's relation to or companionship with the one engaged in the crime and the defendant's actions before, during and after the crime.'" Porter v. State, 715 N.E.2d 868, 870 (Ind. 1999) (quoting Hodge v. State, 688 N.E.2d 1246, 1248 (Ind. 1997)). In this case, Grinstead admitted not only to being present, but also to being the first to hit Cross, helping to move Cross' body, and disposing of the wallet. (R. at 1082-84, 1088-89, 1102-04.) In other words, the prosecutor was explaining that even if one believed Grinstead that he had not struck the fatal blow, there was still sufficient evidence to convict him of murder. In further advancing this explanation, the prosecutor later said, "a person is responsible for the actions of another person when either [] before or during the commission of a crime he aids, induces or

11

causes that other person to commit that crime." (R. 1203.) This is an accurate statement about accomplice liability, and we think defense counsel acted appropriately in letting it go by.

As for Grinstead's claim about requesting a jury instruction on the law of mere presence, counsel suggested, at the post-conviction hearing, that it was likely that the inclusion of an instruction on mere presence was discussed with the trial judge and prosecutor off the record. (P.C. Tr. at 22.) Although counsel "may have disagreed" with some of the instructions, he did not choose to object on the record to the absence of a mere presence instruction. (P.C. Tr. at 22.)

As we observed on direct appeal, "Grinstead's own testimony sufficed to convict him of murder under an accomplice theory." Grinstead, 684 N.E.2d at 487. Grinstead's own testimony eliminated the potential for a mere presence defense, and parties are not entitled to a jury instruction that is not supported by the evidence. Lambert v. State, 743 N.E.2d 719, 739 (Ind. 2001). There was no reason for counsel to make the request.

G. Abandonment Instruction

Grinstead's final claim is that defense counsel was ineffective for failing to object to the prosecution's characterization of the defense as abandonment and allowing the prosecution to include a jury instruction on that defense. Actually, trial counsel did object to the State's characterization of the defense as abandonment, and the court overruled the objection. (R. at 1145-46.) It thus seems unlikely that objecting to an instruction on abandonment would have been fruitful.

H. Trial Counsel Was Not Ineffective

The purpose of an ineffective assistance of counsel claim is not to critique counsel's performance, and isolated omissions or errors and bad tactics do not necessarily mean that representation was ineffective. Bieghler v. State, 690 N.E.2d 188, 199 (Ind. 1997).

Certainly, the cumulative effect of a number of errors can render counsel's performance ineffective. Smith v. State, 511 N.E.2d 1042, 1046 (Ind. 1987). Most of Grinstead's contentions of deficient performance are not well taken, and the modest nature of counsel's one or two failings make them insufficient to overcome the strong presumption that counsel performed adequately within the meaning of the Sixth Amendment.

## II. Grinstead's Claim of Appellate Counsel's Ineffectiveness

There are three basic ways in which appellate counsel may be considered ineffective: 1) when counsel's actions deny the defendant her right of appeal; 2) when counsel fails to raise issues that should have been raised on appeal; and 3) when counsel fails to present claims adequately and effectively such that the defendant is in essentially the same position after appeal as they would be had counsel waived the issue. Bieghler v. State, 690 N.E.2d 188, 192-195 (Ind. 1997) (also noting that Indiana courts apply the two-prong Strickland test to appellate counsel's performance as well).

Grinstead's counsel on direct appeal sought relief on federal double jeopardy grounds, that his sentences for conspiracy to commit theft and theft, and that his sentences for conspiracy to commit murder and murder were unconstitutional. We rejected those claims. Grinstead, 684 N.E.2d at 485-86.

Grinstead now claims that his lawyer was ineffective for failing to raise a double jeopardy claim under the Indiana Constitution. (Br. Pet'r.-Appellant at 24-25.)

At the time Grinstead's direct appeal was filed, this Court had not yet reached our decision in Richardson v. State, 717 N.E.2d 32 (Ind. 1999), concerning double jeopardy under Article 1 §14 of the Indiana Constitution. Still, even before Richardson, "we [had] long adhered to a series of rules of statutory construction and common law that [were] often described as double jeopardy, but [were] not governed by the constitutional test set forth in Richardson." Pierce v. State, 761 N.E.2d 826, 830 (Ind. 2002). Among those sorts of claims that we

13

considered to constitute double jeopardy was a claim based on "[c]onviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished." Richardson, 717 N.E.2d at 56-57 (Sullivan, J., concurring) (relying on Chiesi v. State, 644 N.E.2d 104, 106 (Ind. 1994)); Guyton v. State, 771 N.E.2d 1141, 1143 (Ind. 2002).

These observations were based on Buie v. State, 633 N.E.2d 250, 261 (Ind. 1994). Buie was decided prior to Grinstead's direct appeal, and its holding was consequently available to appellate counsel. Failure to make a double jeopardy argument based on Buie certainly falls within the category of ineffective appellate assistance claims in which counsel failed to present a claim adequately. Since the first prong of the Strickland test is satisfied in this case, we turn to the question of whether counsel's error sufficiently prejudiced Grinstead, or in other words, whether the result of the direct appeal would have been different.

The State readily concedes that the conspiracy to commit theft and theft charges violate double jeopardy since the only overt act contemplated in the conspiracy charge was the theft. (Br. Appellee at 16.) Indeed, as the information filed against Grinstead states, the overt act in furtherance of the conspiracy to commit theft was to "take a wallet and [its] contents from the body of Joseph R. Cross." (R. at 101.) Consequently, we hold that, in regards to the theft and conspiracy to commit theft sentences, appellate counsel's failure to raise a double jeopardy claim under Buie constituted ineffective assistance of counsel and hold that the conviction and sentence for theft should be vacated. See Buie, 633 N.E.2d at 261 ("where the State has obtained a conviction for Conspiracy based on the commission of the underlying offense as the overt act, the State may not subsequently pursue a prosecution for the underlying offense.") (emphasis added).

On the other hand, the charges of murder and conspiracy to commit murder were not such that counsel could have made out a Buie claim. The conspiracy to commit murder charge contained three overt acts: "[to] take Joseph R. Cross to a remote location, or move the body of Joseph R. Cross from the location where he was killed, or ask another person to provide an alibi." (R. at 100-01.) The murder charge stated that Grinstead "did knowingly and intentionally

14

kill another human being." (R. at 100.) The post-conviction court was thus right to say that appellate counsel was not ineffective on these grounds.

## Conclusion

We affirm the post-conviction relief court's holding that Grinstead was not denied effective assistance of counsel at trial.

Because Grinstead's appellate lawyer's failure to present an available double jeopardy claim on direct appeal prejudiced Grinstead to the extent that he should have had his theft conviction vacated, we conclude he was entitled to post-conviction relief as to it.

We otherwise affirm the post-conviction court.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.