## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 08 2019, 11:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Luis Fuerte
New Castle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Luis Fuerte,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

July 8, 2019

Court of Appeals Case No.
18A-PC-2839

Appeal from the Lake Superior Court

The Honorable Salvador Vasquez, Judge
The Honorable Kathleen Sullivan, Magistrate

Trial Court Cause No.
45G01-1704-PC-2

**Bradford, Judge.**

# Case Summary

In November of 2014, Fuerte was convicted of Class B felony attempted incest, Class C felony child molesting, and Class D felony sexual battery. We affirmed Fuerte's convictions on appeal. Fuerte subsequently filed a petition for post-conviction relief ("PCR"). Following a hearing, the post-conviction court denied Fuerte's petition. Fuerte raises a number of arguments on appeal, which we restate as whether the post-conviction court (1) erred in determining that Fuerte suffered ineffective assistance of trial counsel and (2) erred in denying Fuerte's freestanding claims of trial court error. We affirm.

# Facts and Procedural History

Our opinion in Fuerte's direct appeal, which was handed down on November 17, 2015, instructs us to the underlying facts and procedural history leading to this post-conviction appeal:

> Fuerte's biological granddaughter, E.F., was born in March 1996. Her father is Fuerte's son. E.F. and her parents and brothers moved into Fuerte's house in Hammond in 1999. E.F.'s parents lived in the basement, and E.F. began sleeping in a bedroom down the hall from Fuerte's second-floor bedroom after he divorced his wife in 2005. At least one evening a week, Fuerte would babysit E.F. and her brothers while their parents went on a date. E.F. was "really close" to Fuerte, who was "like another dad" to her. Tr. at 84.
>
> In July 2007, when E.F.'s parents were on a date, Fuerte came into her bedroom, took her into his bedroom, and locked the door. He undressed her, undressed himself, and told her to get

on the bed. He fondled her breasts and touched her vaginal area with his fingers and erect penis. E.F. kicked him so that he could not penetrate her vagina. He told her, "[Y]ou can't tell anybody I'm doing this to you or else I'll get in a lot of trouble[.]" *Id.* at 87. E.F. did not tell anyone because she "was scared that [Fuerte] would hurt [her] family." *Id.* at 90. Fuerte subjected E.F. to similar molestations "52 to 60" times a year when her parents were out for the evening; she never allowed him to penetrate her vagina. *Id.* at 128. On other occasions, E.F. would wake up and feel that her nightclothes and bedclothes were "sticky and wet from [Fuerte] ejaculating, so [she] would know he was there." *Id.* at 89.

One night, E.F.'s mother went upstairs to check on her sleeping daughter and saw Fuerte lying on E.F.'s bedroom floor in the dark in his underwear. In "shock," E.F.'s mother told her husband what she had seen and asked him to bring E.F. down to the basement. *Id.* at 174. The next day, Fuerte told E.F.'s mother, "I'm sorry for what you saw last night" and "it's never going to happen again." *Id.* at 176. E.F.'s parents asked E.F. if Fuerte or "anybody" had "ever done anything to her," and "she said no." *Id.* According to E.F.'s mother, they "just kept on being a normal family [...] just like [they] always had." *Id.* at 177. E.F. did move into a basement bedroom, however.

As the molestations continued, E.F. "began avoiding" Fuerte and "wouldn't talk to him." *Id.* at 91. She also began blocking her bedroom door with a dresser "to prevent him from getting towards [her]." *Id.* at 102. When her mother asked about this, E.F. replied that Fuerte "just got [her] really mad" and that she "put that in the way so he wouldn't come talk to [her]." *Id.* at 103. Fuerte continued molesting E.F. until approximately late 2008. *See id.* at 95–97 (E.F.'s testimony regarding when abuse stopped).

In May 2009, a school coach told E.F. and her classmates that "we shouldn't let our problems ruin our lives and that we should

do whatever we can to overcome them and that we will never be happy until we finally settle what it is that's bothering us." *Id.* at 97. Afterward, a "trembling" and "crying" E.F. told her seventh-grade teacher about Fuerte's sexual abuse. *Id.* at 272. The teacher informed the principal, who summoned E.F.'s parents to the school and told them what E.F. had said. E.F.'s parents went home and talked with E.F., who told them about the abuse. The senior pastor of the family's church told E.F.'s parents to avoid contact with Fuerte, so they locked the doors to the basement "to make sure there was no contact between [them]." *Id.* at 189.

Soon thereafter, Fuerte was summoned to a meeting with the church's senior pastor and its Spanish-speaking pastor, Alfredo Deande. With Deande as interpreter, the senior pastor told Fuerte about E.F.'s accusations. According to Deande, "[w]hen the senior pastor got done, [Fuerte] threw himself at the senior pastor's shoes, grabbed onto his ankles and started begging for forgiveness." *Id.* at 280. The senior pastor told Fuerte, "[Y]ou don't need to ask us [...] for forgiveness. You've sinned against God and [...] you've wronged your granddaughter." *Id.* at 281.

After the meeting, Fuerte asked E.F.'s parents if he could talk with them and E.F. E.F.'s father said that Fuerte could talk with him and his wife but not with E.F. According to E.F.'s father, he and his wife and Fuerte "sat at the dining room table and [Fuerte] started sobbing and he said, [...] I'm sorry for what I've done, please forgive me for what I've done." *Id.* at 246.

E.F. gave a statement to law enforcement in July 2009, but the case fell through the cracks and the State did not file charges against Fuerte until October 2013. In November 2014, a jury found him guilty as charged of class B felony attempted incest, class C felony child molesting, class C felony criminal confinement, class D felony criminal confinement, and class D felony sexual battery. Based on double jeopardy concerns, the trial court entered judgment of conviction only on the attempted incest, child molesting, and sexual battery counts. The court

sentenced Fuerte to consecutive terms of twelve years for attempted incest and seven years for child molesting and a concurrent term of eighteen months for sexual battery, for an aggregate sentence of nineteen years executed.

*Fuerte v. State*, 45A03-1501-CR-15 *1–2 (Ind. Ct. App. November 17, 2015) (brackets in original). Fuerte challenged his convictions and sentence on appeal, arguing that the trial court abused its discretion in admitting certain evidence, his convictions for attempted incest and child molesting violated Indiana's double jeopardy clause, and that his sentence was inappropriate. On November 17, 2015, we affirmed Fuerte's convictions and sentence.

[3] On April 17, 2017, Fuerte filed a PCR petition. He amended his petition on December 26, 2017. In this amended petition, Fuerte claimed that he received ineffective assistance from his trial counsel. Following an evidentiary hearing, the post-conviction court issued an order denying Fuerte's PCR petition.

# Discussion and Decision

[4] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id.* A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt*

*v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[5] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

# I. Ineffective Assistance of Counsel

[6] The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the

adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[7] A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

[8] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim

may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

[9] Fuerte appears to argue that his counsel was ineffective for failing to fully investigate potential witness testimony and to object to certain witness testimony. Specifically, Fuerte seems to assert that trial counsel provided ineffective assistance by failing to fully investigate his pastor's potential testimony and to object to his pastor's testimony. The State argues that we should conclude that Fuerte waived his argument because he failed to support it with cogent reasoning. While we agree that Fuerte has failed to provide cogent reasoning in support of his argument that trial counsel provided ineffective assistance, we affirm the post-conviction court not on waiver, but because Fuerte failed to establish prejudice.

[10] Fuerte does not provide any evidence indicating that his trial counsel did not fully investigate the pastor's potential testimony or that any objection to or attempt to limit the pastor's testimony would have been successful. Further, while the pastor's testimony was undoubtedly damning, the record contains significant independent evidence of Fuerte's guilt, including E.F.'s testimony and statements to law enforcement, E.F.'s mother's testimony that she found Fuerte lying on the floor of E.F.'s bedroom in the dark wearing only his underwear, E.F.'s attempts to stay away from Fuerte, observations of E.F.'s demeanor upon revealing Fuerte's actions to school officials, and Fuerte's apology to E.F.'s father. Given this unrelated evidence of his guilt, Fuerte has failed to prove that there is a reasonable probability that, but for counsel's

alleged errors, the result of his trial would have been different. We therefore conclude that Fuerte has failed to prove that he suffered ineffective assistance of counsel. *See Williams*, 706 N.E.2d at 154 (providing that a failure to prove prejudice will cause a claim of ineffective assistance to fail).

## II. Fuerte's Additional Freestanding Claims

[11] Fuerte also presents argument relating to a number of freestanding claims of trial court error. Fuerte argues that the trial court abused its discretion in allowing his pastor to testify that he asked for forgiveness and in permitting the State to introduce vouching testimony during trial. Both of these arguments, however, were raised and decided against Fuerte on direct appeal. As such, they may not be relitigated in the instant PCR proceedings. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006) ("If an issue was raised on direct appeal, but decided adversely to the petitioner, it is *res judicata*."). Further, to the extent that Fuerte presents arguments relating to other freestanding claims of trial court error and to the sufficiency of the evidence to sustain his convictions, we note that Fuerte has failed to establish that these claims were not available on direct appeal. As such, we conclude that the post-conviction court properly determined that the issues could not be raised on PCR because issues available but not raised on direct appeal may not be raised in a subsequent PCR petition. *See Garrett v. State*, 992 N.E.2d 710, 718 (Ind. 2013) (providing that issues available but not raised on direct appeal are waived).

[12] The judgment of the post-conviction court is affirmed.

Crone, J., and Tavitas, J., concur.