## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2020, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Jermaine Carl Davis
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jermaine Carl Davis, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | December 30, 2020 <br><br> Court of Appeals Case No. 20A-PC-489 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Natalie Bokota, Magistrate Judge <br><br> Trial Court Cause No. 45G04-1708-PC-05 |

**Tavitas, Judge.**

# Case Summary

[1] Jermaine Davis appeals the post-conviction court's ("PC Court") denial of his petition for post-conviction relief ("PCR"). We affirm.

# Issues

[2] Davis raises several issues, which we revise and restate as:

> I. Whether Davis received ineffective assistance of trial counsel.
>
> II. Whether Davis received ineffective assistance of appellate counsel.

# Facts

[3] The facts as set out in Davis's direct appeal follow:

> On August 21, 2013, Willie Bailey was at a gas station in Gary when Davis approached him. Davis was the ex-boyfriend of Bailey's sister, Erica. Davis told Bailey that his sister was a "wh***" and threatened to hurt Bailey. Tr. Vol. I p. 65. Outside the gas station, Davis again approached Bailey, called his sister names, and threatened to hurt Bailey. Bailey thought Davis was going to hit him, so Bailey punched Davis, knocking him out. Davis later called Erica and said that he was "going to shoot [their] house up." *Id.* at 134. Davis also called Erica and Bailey's aunt, Glynda Randolph, and told her that he was going to kill Bailey.
>
> The next day, the Bailey family went to a funeral. Bailey rode home that evening with Erica and her friend. As Bailey unlocked the front door of his home, Davis approached him from behind and shot Bailey repeatedly. Erica was sitting in the car with her friend and saw Davis shoot Bailey. Bailey was shot five times

and is now paralyzed from the waist down. Immediately after the shooting, Bailey's brother opened the front door, and Bailey told his brother and aunt that Davis shot him. Bailey's brother saw Davis running away. When officers arrived at the scene, Bailey told them that Davis shot him. While in the hospital, Bailey also identified Davis as the shooter in a photo array. The next day, Erica also gave a statement to officers and identified Davis as the shooter. Four cartridge casings and three spent bullets were recovered at the scene. Melissa Oberg of the Indiana State Police Laboratory determined that the four cartridge casings were fired from the same weapon and that the three bullets were fired from the same weapon.

The State charged Davis with Class A felony attempted murder, Class B felony aggravated battery, Class C felony battery by means of a deadly weapon, Class C felony battery resulting in bodily injury, and Class D felony pointing a firearm. On the Saturday before the trial, the deputy prosecutor informed Davis's counsel that he had just discovered Oberg's lab report. The deputy prosecutor immediately provided the report to Davis's counsel. Prior to the start of the trial, the parties discussed the State's late disclosure of the lab reports. Davis noted that a "big theory of [the] defense was that no analysis of any evidence collected was done . . . ." *Id.* at 10. In response to the trial court's questioning, Davis's attorney noted that the defenses were "alibi and lack of investigation." *Id*. at 11. The trial court noted that the "paperwork saying that the casings came from the same or similar firearm does not inhibit your ability to present an alibi defense" and denied Davis's motion for a continuance. *Id.*

On the first day of the trial, Davis's counsel informed the trial court:

> Judge, we have an issue. When meeting with my client, yesterday, he advised me that he does not have confidence in my abilities to represent him with respect to the trial this

week and I believe there is a break-down of communication and he, on his behalf, he wants me to request either a continuance of the trial or he said he wants a new lawyer.

*Id.* at 3. The trial court informed Davis that he was entitled to a public defender but not the public defender of his choosing. The trial court then asked Davis if he had the money to hire an attorney, and Davis responded that he did not. After a discussion of preparation done by his attorney and prior attorneys, the trial court denied the motion for a continuance. Later, immediately before jury selection began, Davis told the trial court that his family was going to hire an attorney. The trial court informed Davis that he had two and one-half years since he was charged to secure a private attorney and that the trial would proceed as planned. The trial court then told Davis that if he hired a private attorney and had the attorney in court the next morning, he would "consider it." *Id.* at 36. The next morning, Davis had not hired a private attorney, and the trial continued as planned.

The jury found Davis guilty of the charges except for the pointing a firearm charge. The trial court merged the remaining counts into the attempted murder conviction and sentenced Davis to forty-five years in the Department of Correction.

*Davis v. State*, No. 45A03-1606-CR-1636, slip op. at 2-5 (Ind. Ct. App. Apr. 12, 2017), *trans. denied*.

[4] Attorney Phillip King represented Davis at the trial, and Attorney Scott King represented Davis at sentencing and during the filing of a motion to correct error. Attorney Kristin Mulholland represented Davis on direct appeal.

On direct appeal, Davis raised two issues: (1) whether the trial court properly denied Davis's motion for a continuance following the State's late disclosure of lab reports; and (2) whether the trial court violated Davis's constitutional right to counsel when it denied his motion for a continuance to hire a different attorney. This Court affirmed, and our Supreme Court denied transfer.

In August 2017, Davis filed a petition for post-conviction relief, which he amended in April 2019. Davis's amended petition for ineffective assistance of counsel alleged: (1) ineffective assistance of trial counsel for failing to properly investigate, to interview witnesses, to consult with Davis, to cross-examine certain witnesses effectively, to object to certain evidence, to adequately prepare for trial, and to prepare for sentencing; (2) ineffective assistance of appellate counsel for failing to raise certain issues; (3) ineffective assistance of post-conviction counsel; (4) the trial court erred by denying Davis's request for a change of counsel, failing to grant a mistrial, and admitting certain evidence; and (5) prosecutorial misconduct. After multiple evidentiary hearings, the PC Court entered findings of fact and conclusions of law denying Davis's petition for ineffective assistance of counsel. Davis now appeals.

## Analysis

Post-conviction proceedings are civil proceedings in which a defendant may present limited collateral challenges to a conviction and sentence. *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019), *reh'g denied, cert. denied*; Ind. Post-Conviction Rule 1(1)(b). "The scope of potential relief is limited to issues unknown at trial or unavailable on direct appeal." *Gibson*, 133 N.E.3d at 681.

"Issues available on direct appeal but not raised are waived, while issues litigated adversely to the defendant are res judicata." *Id.* The petitioner bears the burden of establishing his claims by a preponderance of the evidence. *Id.;* P.-C.R. 1(5).

[8] When, as here, the petitioner "appeals from a negative judgment denying post-conviction relief, he 'must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision.'" *Gibson*, 133 N.E.3d at 681 (quoting *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164, 122 S. Ct. 1178 (2002)). When reviewing the PC court's order denying relief, we will "not defer to the post-conviction court's legal conclusions," and the "findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Bobadilla v. State*, 117 N.E.3d 1272, 1279 (Ind. 2019). When a petitioner "fails to meet this 'rigorous standard of review,' we will affirm the post-conviction court's denial of relief." *Gibson*, 133 N.E.3d at 681 (quoting *DeWitt v. State*, 755 N.E.2d 167, 169-70 (Ind. 2001)).

## I. Ineffective Assistance of Trial Counsel

[9] Davis argues that his trial counsel rendered ineffective assistance of counsel. To prevail on his ineffective assistance of trial counsel claims, Davis must show that: (1) his counsel's performance fell short of prevailing professional norms; and (2) his counsel's deficient performance prejudiced his defense. *Gibson*, 133

N.E.3d at 682 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

[10] A showing of deficient performance "requires proof that legal representation lacked 'an objective standard of reasonableness,' effectively depriving the defendant of his Sixth Amendment right to counsel." *Id.* (quoting *Overstreet v. State*, 877 N.E.2d 144, 152 (Ind. 2007), *cert. denied*, 555 U.S. 972, 129 S. Ct. 458 (2008)). We strongly presume that counsel exercised "reasonable professional judgment" and "rendered adequate legal assistance." *Id.* Defense counsel enjoys "considerable discretion" in developing legal strategies for a client. *Id.* This "discretion demands deferential judicial review." *Id.* Finally, counsel's "[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.*

[11] "To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the proceedings below would have resulted in a different outcome." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[12] On appeal, Davis raises multiple allegations of ineffective assistance of trial counsel. Specifically, Davis argues his trial counsel was ineffective for: (1) failing to properly prepare for the trial; (2) failing to cross-examine Willie Bailey

and William Wright effectively; and (3) failing to object to closing arguments by the deputy prosecutor.[1] The PC Court found no deficient performance or prejudice concerning these claims, and we cannot say the PC Court's findings of fact and conclusions of law are clearly erroneous.

## *A. Failure to Prepare*

[13] Davis first argues that his trial counsel failed to properly prepare for the trial by failing to: (1) investigate late-disclosed ballistics lab report;[2] (2) consult with Davis; (3) interview Cedric Miller; and (4) prepare a proper defense. Davis, however, has failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced by any alleged deficiency.

---

[1] Davis also argues that trial counsel: (1) failed to cross-examine Glynda Randolph effectively; (2) failed to investigate Erica Bailey's criminal history; and (3) failed to prepare properly for the filing of the motion to correct error. Davis, however, did not raise these arguments in his petition for ineffective assistance of counsel. Issues not raised in a petition for post-conviction relief cannot be raised for the first time on appeal. *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) (holding that claims were "unavailable" where the petitioner did not raise the issues in his initial petition for post-conviction relief or in any of his three amended petitions), *cert. denied*, 535 U.S. 1061, 122 S. Ct. 1925 (2002). Davis also argues that trial counsel failed to object to the deputy prosecutor vouching for a witness during closing arguments. This claim, however, was improperly presented as a freestanding claim in the petition for post-conviction relief, not in the context of ineffective assistance of trial counsel. Accordingly, the PC Court's denial of the claim is not clearly erroneous.

[2] The PCR record includes lab reports dated December 19, 2013 (ballistics), November 7, 2013 (latent impressions), October 29, 2013 (DNA). The ballistics lab report identified Item 004 (one cartridge case) and Item 009T (three bullets and cartridge cases test fired in the firearm in Item 009). The "Results/Opinions/Interpretations" section of the report merely provided:

> The cartridge case in Item 004 and a test fired cartridge case from Item 009T were entered into the IBIS database.

> The test fires In Item 009T will be returned to the contributor. It is recommended that the test fires are retained for a period of at least five years.

PCR Exhibit p. 12. Davis makes no argument on appeal regarding the DNA or latent impressions reports.

[14]  Much of Davis's argument centers on the ballistics lab report, which was not provided to Davis's trial counsel until the weekend before the trial. As a result of the late-discovered evidence, trial counsel asked for a continuance of the trial, which the trial court denied. We noted on direct appeal:

> At the trial, Davis's main defenses were that he had an alibi and that the investigation was shoddy. The admission of the lab report did not harm either defense. The [ballistics] lab report merely noted that the four cartridge casings were fired from the same weapon and that the three bullets were fired from the same weapon. The [ballistics] lab report did not indicate who fired the weapon and did not affect Davis's alibi defense.

*Davis*, No. 45A03-1606-CR-1636, slip op. pp. 5-6.

[15]  At the post-conviction hearing, Davis argued that his trial counsel failed to properly prepare for trial by the failure to realize that the ballistics lab report was not in the file and the failure to timely request the lab report. In the post-conviction appeal, however, Davis argues that his trial counsel "could have argued that the victim [was] shot with a .45 caliber weapon and the State had submitted a .9 mm handgun for ballistic testings." Appellant's Br. p. 14. The ballistics lab report apparently established that the casings and bullets found at the scene were all fired from the same weapon, which was not the handgun submitted for testing.[3] Our review of the record, however, reveals no information regarding the .9mm handgun submitted for testing and its

---

[3] This is not evident from the lab report submitted at the PCR hearing.

connection to Davis, if any. The fact that a random .9mm handgun was submitted for testing would not have made it more or less likely that Davis was the shooter of the .45 caliber handgun. Given this lack of evidence, Davis has simply failed to establish that his trial counsel was deficient for failing to raise the issue. Moreover, Davis has failed to establish that his trial counsel's preparation and investigation related to the ballistics lab report impaired Davis's defenses or that Davis was actually prejudiced.

[16] Cedric Miller testified at the PCR hearing that he received a call from his cousin, Mason, shortly after the shooting and learned that Bailey had been shot. Davis's name was not mentioned during the conversation, and the family did not know who shot Bailey. The PC Court found: "Although Davis considers Miller to be a vital witness overlooked by counsel, the evidence does not prove that counsel overlooked him or that Miller possessed any relevant information concerning the case generally or the identity of the shooter specifically." Appellant's App. Vol. II p. 202. The PC Court's finding is not clearly erroneous. Even if trial counsel had called Miller as a witness and the testimony had been admissible, there is no reasonable probability that the result of the proceeding would have been different.

[17] Overall, Davis has simply failed to prove that his trial counsel's performance was deficient as related to the trial preparation. Evidence presented at the ineffective assistance of counsel hearings demonstrated that Attorney Phillip King has been an attorney since 2003, and he was the second attorney assigned to Davis's case. When King was assigned to the case, he reviewed the case file

from Davis's prior attorney, reviewed the State's discovery, reviewed the prior depositions, hired an investigator to contact witnesses, attempted to locate Davis's alibi witnesses and a possible suspect, attempted to confer with Davis, and prepared a theory for the defense. The defense theory included insufficiency of the evidence, poor eyewitness identifications, and a lack of proper investigation. Despite King's investigation efforts, he was unable to locate an unknown female that allegedly spoke to the Gary police on the night of the shooting. The Gary police did not identify the woman in their report. Further, alibi witnesses identified by Davis did not cooperate with King.

[18] Davis argues that King only met with Davis one time. According to King, however, he spoke with Davis several times before the trial. After court hearings, Davis would leave immediately and would not stay to discuss his case. King made arrangements to meet with Davis, but Davis repeatedly cancelled the appointments. King met with Davis the Sunday before the trial, but Davis became upset and "cut [the meeting] short." PCR Tr. Vol. II p. 35. King was "frustrated" by Davis's "unwillingness to cooperate." *Id.* at 37.

[19] None of Davis's allegations related to his trial counsel's lack of preparation for the trial amount to deficient performance nor do they establish that Davis was prejudiced by the alleged deficient performance. We cannot say the PC Court's denial of this claim was clearly erroneous.

### B. Effective Cross-Examination

Next, Davis argues that he received ineffective assistance of counsel because his trial counsel failed to effectively cross-examine Willie Bailey and William Wright.[4] Davis further contends that trial counsel failed to impeach Bailey and Wright with prior inconsistent statements from their depositions. The PC Court analyzed the alleged deficiencies and found that the lack of cross-examination amounted to either a strategic decision or that Davis's trial counsel had indeed impeached Bailey and Wright with the inconsistencies.

Our review of Bailey's and Wright's testimony shows that trial counsel did, in fact, impeach both by confronting both with inconsistencies in their testimony. Most of the other instances raised by Davis can be explained as strategy decisions, as stated by the PC Court. To the extent the instances cannot be explained as strategy, we again note that a showing of deficient performance is not supported by isolated mistakes. *Gibson*, 133 N.E.3d at 682. Rather, such a showing "requires proof that legal representation lacked 'an objective standard of reasonableness,' effectively depriving the defendant of his Sixth Amendment right to counsel." *Id.* Even if there are isolated instances of inconsistencies that Davis's trial counsel should have explored on cross-examination, Davis has

---

[4] Davis also briefly contends that his trial counsel should have cross-examined Oberg regarding the lab report. As with Davis's arguments related to his trial counsel's preparation, Davis has similarly failed to demonstrate that he was prejudiced by this lack of cross-examination regarding the lab report.

failed to demonstrate that his trial counsel's performance was deficient. The PC Court's denial of this claim is not clearly erroneous.

### C. Objection to Closing Arguments

[22] Next, Davis argues that he received ineffective assistance of trial counsel because trial counsel failed to object to alleged inflammatory comments during the deputy prosecutor's closing arguments. These comments relate to Bailey's confinement to a wheelchair, Bailey's inability to give his daughter away at her wedding, and Bailey's inability to go to a daddy/daughter dance. The PC Court rejected this claim and found:

> Trial counsel made a tactical decision to not object to the majority of the State's comments during closing arguments. Like many attorneys, he considers the statements in the light of their context: arguments, not evidence. When the State asked the jury to put itself in the victim's place however, counsel did object and the objection was sustained. Tr. Vol. II, pp. 100-01. Davis fails to prove deficient performance.

Appellant's App. Vol. II p. 206.

[23] Trial counsel did, in fact, object to the deputy prosecutor's comment regarding the victim during closing arguments. Moreover, trial counsel's lack of objection to other comments during closing arguments was a matter of strategy and a tactical decision, which does not support a finding of deficient performance. The PC Court's finding that Davis failed to prove deficient performance is not clearly erroneous.

## II. Ineffective Assistance of Appellate Counsel

Davis next argues that he received ineffective assistance of appellate counsel. "The standard for gauging appellate counsel's performance is the same as that for trial counsel." *Weisheit v. State*, 109 N.E.3d 978, 992 (Ind. 2018), *reh'g denied, cert. denied*, 139 S. Ct. 2749 (2019). Our Supreme Court has held that appellate ineffective assistance of counsel claims "generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well." *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013).

### A. Ballistics Lab Report

Davis argues that his appellate counsel was ineffective in her arguments related to the late-disclosed ballistics lab report. Appellate counsel raised the issue in the context of Davis's motion to continue, but Davis contends appellate counsel should have raised the issue differently.

This claim falls in the category of failure to present an issue well. "Claims of inadequate presentation of certain issues . . . are the most difficult for convicts to advance and reviewing tribunals to support." *Weisheit*, 109 N.E.3d at 992. To the extent that Davis's appellate counsel failed to present zealous arguments regarding the ballistics lab report, "an ineffectiveness challenge resting on counsel's presentation of a claim must overcome the strongest presumption of adequate assistance." *Bieghler v. State*, 690 N.E.2d 188, 196 (Ind. 1997), *cert. denied*, 525 U.S. 1021, 119 S. Ct. 550 (1998). "Judicial scrutiny of counsel's performance, already 'highly deferential,' is properly at its highest." *Id.*

(internal citation omitted). "Relief is only appropriate when the appellate court is confident it would have ruled differently." *Id.*

[27] According to Davis, his appellate counsel simply raised the same issues raised in his motion to correct error. Davis argues that his appellate counsel should have also raised the issue of the firearm discussed in the ballistics lab report because the "firearm could have helped Davis's case since the victim was shot with a .45 caliber bullet and the gun that was in the lab reports was a .9mm." Appellant's Br. p. 30. We have already rejected this argument in the context of Davis's ineffective assistance of trial counsel claim. We again note that the record reveals no information regarding the .9mm handgun submitted for testing and its connection to Davis, if any. Even if appellate counsel had made the argument regarding the .9 mm handgun, there is no indication that this argument would have resulted in a different ruling on direct appeal. The PC Court's denial of this claim is not clearly erroneous.

### B. Ineffective Assistance of Trial Counsel

[28] Next, Davis seems to argue that appellate counsel should have raised a claim of ineffective assistance of trial counsel. To show that appellate counsel was ineffective for failing to raise an issue on appeal, thus resulting in waiver for collateral review, "the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential." *Garrett*, 992 N.E.2d at 724. To evaluate the performance prong when appellate counsel waived issues upon appeal, we look at the following: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether

the unraised issues are "clearly stronger" than the raised issues. *Id.* "If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether 'the issues which . . . appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial.'" *Id.* (quoting *Bieghler*, 690 N.E.2d at 194).

[29]    The PC Court denied this claim and found:

> Davis claims that appellate counsel should have raised ineffective assistance of trial counsel. When ineffective assistance of trial counsel is not raised on direct appeal, it may be raised for the first time in a petition for post-conviction relief. Since ineffective assistance of trial counsel is available for post-conviction review, Davis was not prejudiced by appellate counsel's omission of this issue on direct appeal. Davis fails to establish deficient performance or prejudice concerning appellate counsel's representation.

Appellant's App. Vol. II p. 209 (internal citations omitted).

[30]    Our Supreme Court has noted that "the failure to litigate a claim of ineffective assistance of counsel in a direct appeal does not preclude a petitioner from seeking post-conviction relief on that basis." *Landis v. State*, 749 N.E.2d 1130, 1133 (Ind. 2001). Moreover, "if a claim of ineffective assistance of counsel has been litigated on direct appeal, it is not available in post-conviction proceedings." *Id.* *See also Jewell v. State*, 887 N.E.2d 939, 941 (Ind. 2008) ("A criminal defendant claiming ineffective assistance of trial counsel is at liberty to elect whether to raise this claim on direct appeal or in post-conviction

proceedings. But if raised on direct appeal, the appellate resolution of the issue acts as res judicata and precludes its relitigation in subsequent post-conviction relief proceedings.") (internal citation omitted). Our Supreme Court held in *Conner v. State*, 711 N.E.2d 1238, 1252 (Ind. 1999), *cert. denied*, 531 U.S. 829, 121 S. Ct. 81 (2000), that "because appellate counsel is not required to raise this claim [of ineffective assistance of trial counsel] on direct appeal, appellate counsel's failure to do so was not deficient representation."

[31] As in *Conner*, Davis was not prejudiced by appellate counsel's failure to raise a claim of ineffective assistance of trial counsel on direct appeal. Such a claim was still available in post-conviction proceedings. The PC Court's denial of Davis's claim is not clearly erroneous.

# Conclusion

[32] The PC Court's denial of Davis's petition for ineffective assistance of counsel is not clearly erroneous. We affirm.

[33] Affirmed.

Bailey, J., and Robb, J., concur.